IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROGER W. MILLER,

        Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

No. CV 06-6050-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Roger Miller seeks judicial review of the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1956, Mr. Miller completed high school. Tr.[1] 64, 78. Between 1974 and 1995 Mr. Miller worked as a logger. Tr. 73.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed on June 2, 2006 (Docket #8).

1 - OPINION AND ORDER

Mr. Miller alleges disability since April 20, 2000 due to "congestive heart failure." Tr. 72. His application was later amended to include obesity and mild emphysema. Tr. 46-47. Mr. Miller's applications were denied initially and upon reconsideration. Tr. 48-52, 54-56. A hearing was held before an Administrative Law Judge ("ALJ") on September 8, 2004. Tr. 312-63. On April 15, 2005, the ALJ found Mr. Miller not disabled. Tr. 17-30. Mr. Miller seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Mr. Miller challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(a)(4)(iii), (d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the ALJ determines the claimant's impairments meet or equal a Listing, the Commissioner will find the claimant disabled without completing the remaining steps in the sequence.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 416.920(e), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (1996). The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

At step four, the claimant is not disabled if the Commissioner determines she retains the RFC to perform her past relevant work experience. 20 C.F.R. § 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 416.920(a)(4)(v), (g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's RFC. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found that Mr. Miller's severe impairments include obesity, sleep apnea, and shortness of breath. Tr. 29. The ALJ did not fully credit Mr. Miller's "assertions of disability." *Id.* The ALJ evaluated Mr. Miller's RFC:

> [T]he claimant retains the [RFC] to lift and carry twenty pounds occasionally and ten pound [sic] frequently. He can stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, and he can sit with normal breaks for a total of about six hours in an eight-hour workday. In addition, the claimant is able to occasionally stoop, kneel, crouch, and climb ramps and stairs, but he is unable to climb ladders, ropes, and scaffolds or crawl.

Tr. 29. This RFC constitutes "light" level work. 20 C.F.R. § 416.967(b).

At step five, the ALJ found that Mr. Miller's RFC did not preclude him from performing a significant number of jobs in the national economy. Tr. 30. The ALJ solicited testimony from a vocational expert ("VE") who confirmed Mr. Miller could perform such work. Tr. 351-62. Accordingly, the ALJ determined Mr. Miller was not disabled under the Act at any time through

the date of his decision. Tr. 30

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Mr. Miller contends the ALJ erred in finding him not disabled because the ALJ did not properly apply the provisions established in SSR 02-1p, 2000 WL 628049 (2000). Mr. Miller also claims the ALJ improperly addressed lay witness testimony and erred in finding he could perform work in the national economy at step five. Mr. Miller does not challenge the ALJ's credibility finding. This court first addresses the ALJ's evaluation of the medical evidence, and subsequently considers the ALJ's evaluation of that evidence under SSR 02-01p.

I.      **Medical Source Statements**

   a.      **Treating Physician Dr. Chapin**

Mr. Miller contends the ALJ improperly quoted Dr. Chapin's record, failed to note Dr. Chapin's oximeter testing results, and failed to give proper notice to Dr. Chapin's disability opinion.

A treating physician's opinion is ordinarily accorded controlling weight unless the ALJ articulates "specific and legitimate reasons that are supported by substantial evidence in the

4 - OPINION AND ORDER

record." *Edlund*, 253 F.3d at 1157. Here, the ALJ considered Dr. Chapin's opinion in detail. The ALJ did not disregard all aspects of Dr. Chapin's opinion.

The ALJ noted that, "it appears Dr. Chapin did not think the claimant had congestive heart failure. However, he diagnosed dyspnea[2] and suspected Pickwickian[3] etiology," which accounted for Mr. Miller's chest pain. Tr. 19. The ALJ also noted Dr. Chapin's negative exercise stress test results and Dr. Chapin's continued supervision of Mr. Miller's sleep apnea and obesity hyperventilation syndrome. Tr. 19, 20. The ALJ found Dr. Chapin's notes showed Mr. Miller's sleep apnea treatment was "moderately successful" and found that while Dr. Chapin noted a "tiny improvement" in Mr. Miller's breathing difficulties, Dr. Chapin also noted considerable edema. *Id.*

After comparing Dr. Chapin's opinion with the opinions of two examining physician and "the record as a whole," the ALJ concluded his analysis of Dr. Chapin's report saying, "Dr. Chapin's opinions have been considered but they are not accorded controlling weight because they are not supported by medical evidence and are inconsistent with other substantial evidence in the record." Tr. 26. The ALJ cited four reasons for this finding: (1) Dr. Chapin found that Mr. Miller could sit four to six hours and could occasionally lift ten pounds; (2) Dr. Chapin's restrictions were narrower than those suggested by Mr. Miller's testimony or by Mr. Miller's reported activities of daily living; (3) pulmonary testing suggests Mr. Miller's pulmonary function "have not shown severe problems or a worsening of breathing problems and test results have actually improved over time. The most recent test results show only mild restrictions, which worsened after medication;" and (4) Mr. Miller's sleep apnea appeared to improve under Dr.

---

[2] Dyspnea is "a distressful situation of uncomfortable breathing that may be caused by certain heart conditions, strenuous exercise, or anxiety." Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

[3] Pickwickian syndrome is "an abnormal condition characterized by obesity, decreased pulmonary function, somnolence, and polycythemia. *Id.*

5 - OPINION AND ORDER

Chapin's treatment. Tr. 25-26. These findings are reflected in the record. Tr. 239, 271, 295, 296.

Each of these reasons is an appropriate and sustainable reason to reject physician testimony. *See* 20 C.F.R. § 416.927; *see* also *Edlund*, 253 F.3d at 1157. Furthermore, vocational decisions of disability are reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1). Therefore, the ALJ's finding that Dr. Chapin's opinion is not entitled to controlling weight is sustained.

### b.     Treating Physician Dr. Muday

Mr. Miller suggests the ALJ improperly disregarded limitations assessed by "his new treating physician, Dr. Teresa Muday." Dr. Muday submitted a report unaccompanied by any treatment notes, records, or clinical findings. Tr. 307-309. While one visit may suffice to establish a treating relationship, Dr. Muday's report does not even establish that she examined Mr. Miller. *See Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (A treating source is a physician who has provided a claimant with medical treatment or evaluation and either has, or had, an ongoing treatment relationship with the claimant). Regardless, an ALJ may reject a physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ twice noted that Dr. Muday provided no notes or explanations for her findings regarding Mr. Miller. Tr. 25, 27. For this reason, the ALJ's analysis of Dr. Muday's report is sustained.

### c.     Examining Physician Dr. Verhey

Mr. Miller first submits the ALJ failed to note examining physician Dr. Verhey's reports that Mr. Miller complained of "shortness of breath." In discussing Dr. Verhey's opinion, the ALJ noted that Mr. Miller told Dr. Verhey "that his activities were primarily limited due to shortness of breath and weight problems." Tr. 21. Mr. Miller's initial suggestion is not based upon the record and therefore fails.

6 - OPINION AND ORDER

Mr. Miller also submits that "there is no evidence that Dr. Verhey considered the impact of Mr. Miller's obesity on his residual functional capacity, and Dr. Verhey did not test Mr. Miller's oxygen saturation levels."

Dr. Verhey noted Mr. Miller's obesity. Tr. 303. SSR 02-01p suggests determination of obesity and a claimant's RFC is the province of the agency or the ALJ. The SSR does not suggest physician reports must consider obesity. Conversely, the SSR states:

> In most cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case, even if a treating or examining physician has not indicated a diagnosis of obesity. Generally, we will not purchase a consultative examination just to establish a diagnosis of obesity.

SSR 02-01p at *3.

This language suggests an examining physician has no special burden to consider obesity. Furthermore, the record repeatedly demonstrates Mr. Miller's oxygen saturation testing elsewhere. Tr. 240, 248, 264, 267, 288, 291, 295, 301. For these reasons, this court finds the ALJ had no special duty to order additional testing or to reject Dr. Verhey's opinion because he did not perform additional testing.

c. **The ALJ's Reading of the Record**

Mr. Miller asserts "the ALJ selectively excises portions of the record to support his argument." The ALJ is not required to exhaustively recite all elements of the record. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Nor is the ALJ required to discuss evidence "neither significant nor probative." *Id.* Contrary to Mr. Miller's submission, the ALJ noted Mr. Miller's report that he must stop and rest after walking two hundred feet. Tr. 22. Mr. Miller also submits that the ALJ failed to note that "he had been placed on oxygen." The indicated transcript citation refers to Mr. Miller's activities of daily living report and makes no reference to oxygen therapy. Tr. 96. Regardless, the ALJ repeatedly noted Mr. Miller's oxygen therapy. Tr. 22, 25, 26. In contending the ALJ's allegedly "selective" reading of the record, Mr. Miller does not point

7 - OPINION AND ORDER

to other omissions by the ALJ. This court finds the ALJ's decision based upon the record and sustains the ALJ's reading of the record.

## II.   Social Security Ruling 02-01p

Mr. Miller contends the ALJ improperly applied SSR 02-01p in considering Mr. Miller's obesity. Mr. Miller recites elements of the SSR but does not articulate how the ALJ failed to find his impairment met or equaled a listed disorder under SSR 02-01p. The ALJ found Mr. Miller's obesity "severe" at step two in the sequential analysis. Tr. 24.

SSR 02-01p provides guidelines for evaluating obesity in conjunction with impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The SSR states:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.

SSR 02-01p at *5. This court will consider the ALJ's evaluation of Mr. Miller's relevant impairments in light of the SSR standard.

### a.   Effective Ambulation

SSR 02-01p also states:

> We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.002b or 101.00B2b[4] of the listings, it may substitute for the major dysfunction of the joints(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A,[5] and we will then make a finding of medical equivalence.

---

[4] Listing 101.00B(2)(b) refers to ineffective ambulation in children and will not be discussed.

[5] Listing 101.2(A) similarly refers to ineffective ambulation in children and will not be discussed.

8 - OPINION AND ORDER

SSR 02-01p at *5.

Mr. Miller's submission that he must simply show his obesity is "functionally equivalent" via his periodic rest while walking misconstrues the SSR language cited above. Ineffective ambulation "is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits functioning of both upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00B(2)(b). Mr. Miller's reportedly slow pace does not meet this standard. Listing 1.00J describes orthotic, prosthetic, or assistive devices. The record does not suggest Mr. Miller used or requires such a device. The ALJ appropriately considered Mr. Miller's ambulatory abilities under SSR 02-01p and did not find Mr. Miller unable to effectively ambulate. Tr. 19, 22, 24, 26. This finding is sustained.

### b.    Pulmonary or Cardiovascular Impairments

SSR 02-01p also stipulates that the agency may find "that the combination of a pulmonary or cardiovascular impairment has signs, symptoms and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings." SSR 02-01p at *5.

The ALJ considered Mr. Miller's reports to physicians of chest pain and difficulty breathing. Tr. 19, 21. The ALJ noted that no diagnosis of congestive heart failure was confirmed by any physician. Tr. 10, 23. The ALJ considered Dr. Chapin's findings of suspicious Pickwickian etiology, dyspena diagnosis, edema, and sleep apnea, discussed above. Tr. 19-20. The ALJ considered examining physician Dr. Nolan's findings of edema and normal gait. Tr. 19. The ALJ noted that Mr. Miller had normal chest x-rays with "clear and expanded lungs." Tr. 20. The ALJ also noted examining physician Dr. Verhey's findings that Mr. Miller's lungs were "clear to ausculation" and that Mr. Miller had edema. Tr. 20.

The ALJ also noted that Dr. Verhey suggested Mr. Miller's reports of chest pain required "further testing." Tr. 21. Mr. Miller does not challenge the ALJ's development of the record.

Furthermore, the record repeatedly fails to evidence congestive heart failure. Tr. 234, 242, 305. The ALJ appropriately concluded, "there is insufficient objective medical evidence to establish a medically determinable impairment related to the claimant's heart." Tr. 23. This finding is sustained.

### c. Sleep Apnea

SSR 02-01p finally states that, "The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day" SSR 02-01p at *6. Furthermore, "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea." *Id.* The ALJ considered Mr. Miller's sleep apnea in detail, finding it a severe impairment. Tr. 24, 29. The ALJ also noted that "a repeat oximetry study after the claimant was using CPAP[6] showed oxygen saturation within normal range." Tr. 24. The ALJ noted Mr. Miller's reports of daytime grogginess when his CPAP sleep apnea treatment failed. Tr. 22. However, the ALJ subsequently identified clear and convincing reasons for finding Mr. Miller not credible, including inconsistent testimony and insufficient medical evidence. Tr. 23-25. These reasons are sufficient to make a negative credibility determination. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Once an ALJ has provided such reasoning, he is not required to consider symptom testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ's analysis of Mr. Miller's sleep apnea is based upon the record and utilizes the appropriate legal standards.

For these reasons, this court finds that the ALJ adequately considered the factors identified in SSR 02-01p.

---

[6] CPAP refers to a device creating "continuous positive airway pressure," used in the treatment of sleep apnea. *See* Anderson et al., *Allied Health Dictionary*.

### III. Lay Witness Testimony

Mr. Miller suggests the ALJ failed to properly evaluate statements submitted by his father, Travis Miller. The ALJ noted Travis Miller's statement that his son's condition had worsened, and that Mr. Miller could no longer perform past activities, such as running a weed eater. Tr. 23. The ALJ also noted that Travis Miller reported that Mr. Miller helps around the house but has shortness of breath and problems with walking. Tr. 23. Travis Miller also reported that his son "must sit and rest once in awhile when he goes to the store, and he appears very depressed." Tr. 23.

The ALJ has a duty to consider lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Id.* The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen v. Chater*, 100 F.3d at 1462, 1467 (9th Cir. 1996).

The ALJ did not discredit Travis Miller, rather he found Travis Miller's statements unsupported by the medical record. Tr. 23. Such a finding is an acceptable reason to reject lay witness testimony. *Lewis*, 236 F.3d at 512. Mr. Miller's submission that the ALJ failed to adequately assess Travis Miller's testimony fails.

### IV. The ALJ's Step Five Finding

Mr Miller finally suggests the ALJ failed to make an adequate step five finding because he relied upon unsubstantiated vocational testimony. Mr. Miller does not identify what limitations the ALJ failed to include, pointing only to "limitation he described at the hearing." At

11 - OPINION AND ORDER

his hearing, Mr. Miller stated that he uses an oxygen concentrator while laying down, that he must sit after five or ten minutes of standing, that he experiences numbness in his legs, and that he must stand after "a couple of hours" of sitting. Tr. 328, 331-333. Mr. Miller testified that he can walk no further than 100 feet before experiencing shortness of breath. Tr. 328, 331-33. Mr. Miller also testified that he could lift a 20 pound bag of groceries. Tr. 333. Because the ALJ found Mr. Miller not credible, the ALJ was not required to include such limitations in his questions to the vocational expert. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). This court again notes that Mr. Miller does not challenge the ALJ's credibility decision.

The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss*, 427 F.3d at 1217; *Osenbrock,* 240 F.3d at 1164-65. The ALJ's questions to the VE included restrictions identified in Mr. Miller's appropriately supported RFC assessment. Tr. 353-54. Because the ALJ did not find further limitations supported by record, it was not error for the ALJ to exclude these limitations from his hypothetical question. *Osenbrock,* 240 F.3d at 1164-65; *Magallanes,* 881 F.2d at 757.

In summary, this court finds the record supports the ALJ's finding that Mr. Miller's demonstrated impairments do not have dispositive effect upon his ability to work. Mr. Miller additionally failed to show the ALJ's RFC assessment was erroneous. Furthermore, the ALJ appropriately included all limitations identified in Mr. Miller's RFC assessment in his hypothetical questions to the VE.

Accordingly, this court concludes the Commissioner's decision that Mr. Miller is not disabled and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence.

## CONCLUSION

The Commissioner's decision that Mr. Miller did not suffer from disability and is not entitled to benefits under Title II XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this  4th   day of January, 2007.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge